# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>　　　　Plaintiff/Counter-Defendant,<br><br>v.<br><br>UNITED STATES RENT A CAR, INC., *doing business as* Advantage Rent a Car *doing business as* U.S. Rent a Car,<br><br>　　　　Defendant/Third-Party Plaintiff/<br>　　　　Counter-claimant,<br><br>v.<br><br>ROSEDALE DODGE, INC., 500 Ford Road, Minneapolis, MN 55426,<br><br>　　　　Third-Party Defendant,<br><br>WALDEN FLEET SERVICES II, INC., 500 Ford Road, Minneapolis, MN 55426,<br><br>　　　　Third-Party Defendant. | Civil No. 10-3900 (JRT/JJK)<br><br><br><br><br><br><br><br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Monica L. Clark and Todd C. Pearson, **DORSEY & WHITNEY LLP**, 50 Sixth Street South, Suite 1500, Minneapolis, MN 55402, for plaintiff/counter-defendant.

Thomas G. Wallrich and Heather L. Marx, **HINSHAW & CULBERTSON LLP**, 333 South Seventh Street, Suite 2000, Minneapolis, MN 55402, for defendant/third-party plaintiff/counterclaimant.

Plaintiff U.S. Bank ("USB") extended a loan to third-party defendant Walden Fleet Services II, Inc. ("Walden"), an entity associated with bankrupt businessman Dennis Hecker.  Following Walden's default, Walden assigned to USB the right to collect any debt owing to Walden by defendant United States Rent a Car, Inc., d/b/a Advantage Rent a Car & U.S. Rent a Car ("USRAC").  USB filed suit and moved for summary judgment prior to the commencement of discovery.  USRAC asserts several counterclaims against USB, Walden, and third-party defendant Rosedale Dodge, Inc. ("Rosedale"), another Hecker entity.  According to USRAC, not only does it owe no debt to Walden, Walden – and USB – owe a sum to USRAC.  USB has also moved for sanctions against USRAC.

The Court grants summary judgment to USB in so far as USRAC alleges that USB colluded with Hecker and his entities, and in so far as it is claiming an entitlement to an affirmative recovery from USB beyond the amount of account debt with Walden. However, because there are material factual disputes regarding Walden's performance and the amount of the debt, the Court denies summary judgment to USB in all other regards.  The Court also declines to impose sanctions against USRAC.

## BACKGROUND

Walden, owned and operated by Hecker and now largely defunct, was in the business of purchasing high volumes of vehicles and leasing them to third parties, frequently vehicle rental agencies such as USRAC.  Pursuant to a Wholesale Lease Line and Security Agreement dated July 21, 2006 ("the Security Agreement"), USB agreed to

loan Walden up to $45,000,000 to finance Walden's purchase and lease of vehicles to third parties. (Aff. of David Kopolow, ¶ 3, Nov. 19, 2010, Docket No. 14; *id.*, Ex. A.)

When USRAC sought to expand its operations and obtained a contract to provide vehicle rental services at McCarran International Airport in Las Vegas, Nevada, it agreed through a Stock Purchase Agreement ("the Stock Purchase Agreement") dated May 21, 2006, to sell 49% of USRAC stock to Nugget Leasing, Inc. ("Nugget"), another entity owned and operated by Hecker. (Aff. of Maria Romano, ¶¶ 3, 5, 6, Jan. 11, 2011, Docket No. 19; *id.*, Ex. A.) Hecker himself executed an Option Agreement ("the Option Agreement") for the right to a purchase the remaining fifty-one percent of the stock from Maria Romano, who held it. (*Id.* ¶ 7; *id.*, Ex. B.) USRAC alleges that Hecker and Nugget induced it and Romano to accept the terms of the Stock Purchase Agreement and the Option Agreement by promising to sell and lease USRAC vehicles through various Hecker entities at less-than-retail rates. (*Id.* ¶ 8.)

A hand-written document also dated May 31, 2006, and signed by USRAC, Romano, Nugget, and another Hecker entity, Southwest-Tex Leasing, provides, "Stock Purchase Agreement we signed is released and we need to confirm the disclosure schedules. . . . [O]ther agreements will be released when we close on the Stock Purchase Agreement . . . ." (*Id.*, Ex. E.) According to USRAC, the "release" referenced in the document was an inartfully worded reference to release from escrow. (*Id.* ¶ 10.) The stock sale was subsequently approved in USRAC's corporate records, Nugget was treated as a stockholder of USRAC, and Erik Dove, a Hecker associate, was installed on USRAC's Board of Directors. (*Id.* ¶¶ 10-11.)

USRAC leased numerous General Motors ("GM") vehicles from Walden pursuant to a Motor Vehicle Lease Agreement dated January 1, 2007 ("the Lease Agreement") and Vehicle Lease Order ("the GM VLO"). (Kopolow Aff., Exs. B, C, Docket No. 14.) USRAC alleges that Hecker and Dove represented to USRAC that USRAC would be able to lease the vehicles at Walden's cost, including the value of various rebates and incentives received by Walden, worth approximately $3,000 to $5,000 per vehicle. (Romano Aff. ¶ 13, Docket No. 19.) The GM VLO provides a formula for determining lease payments based on a daily depreciation charge and the capitalized cost of the vehicle. (Kopolow Aff., Ex. C at 4, Docket No. 14.) According to USRAC, Hecker and Dove verbally represented that this "capitalized cost" would incorporate Walden's application of all manufacturer discounts and rebates. (Romano Aff. ¶ 8, Docket No. 19.) Accordingly, USRAC agreed to lease or purchase substantially all of its rental fleet through Hecker entities, including Walden and Rosedale. (*Id.* ¶ 15.)

The Lease Agreement required USRAC to return the vehicles to designated auction sites at the end of the vehicles' lease terms and no later than the "Maximum Off-Lease-Date" set forth in the GM VLO. The vehicles were to be repurchased by GM at a predetermined price. If a vehicle became ineligible for repurchase because of USRAC's failure to return it in a timely fashion or disqualifying damage, the Lease Agreement required USRAC to pay Walden the difference between the Guaranteed Repurchase Price and the price at which the GM vehicle was ultimately sold. USB's security interest under the Security Agreement attached to Walden's rights against USRAC under the Lease Agreement and the GM VLO.

USRAC began using GM vehicles pursuant to the Lease Agreement and GM VLO in February 2008. According to USRAC, Walden repeatedly failed or refused to lease USRAC vehicles at Walden's net price, as the parties allegedly agreed, instead overcharging USRAC sometimes even higher-than-market rates. (*Id.* ¶ 17.) USRAC alleges that it nonetheless continued to lease through Hecker entities because USRAC was required to obtain the personal guaranty of Nugget, as a significant USRAC shareholder, for any vehicle financing and Nugget (through Hecker) refused to make such a guaranty available for any source outside the Hecker entities. (*Id.* ¶ 18.) Dove, USRAC asserts, provided information regarding the Walden/USRAC lease agreements to USB, as the secured lender on the vehicle fleet. (*Id.* ¶ 19.)

In 2008 and 2009, many of Hecker's entities, including Nugget, and eventually Hecker himself filed for bankruptcy protection.[1] By October 2008, USRAC stopped making payments due under the contracts. (Kopolow Aff. ¶ 5, Docket No. 14.) USB asserts that USRAC's delinquent lease payments total $97,475.55. (*Id.*) In addition, according to Walden's records, USRAC failed to return a majority of the GM vehicles by the vehicles' Maximum Off-Lease-Dates, so GM refused to repurchase them. (*Id.* ¶ 6.) Walden subsequently sold the rejected GM vehicles, incurring an alleged loss of $109,966.51. (*Id.*)

When Walden defaulted on its obligations to USB under the Security Agreement, it agreed to surrender to USB collateral under the agreement pursuant to a Voluntary

---

[1] USRAC subsequently agreed with Nugget's bankruptcy trustee to repurchase its stock from Nugget. (Romano Aff. ¶ 27, Docket No. 19.)

Surrender Agreement dated May 26, 2009 ("the Surrender Agreement").  (*Id.* ¶ 7; *id.*, Ex. E.)  The Surrender Agreement provides:

> The execution and delivery by the Bank of this Agreement shall not create any obligation on the part of the Bank to third parties that have any claims whatsoever against the Borrower [Walden] . . . [a]nd the Bank does not assume or agree to discharge any liabilities of any Borrower other than as expressly assumed or discharged hereby.

(*Id.* at 6.)

Accordingly, USB alleges that USRAC is indebted to Walden, and to USB as an assignee of the debt, in the amount of $207,442.06, plus applicable interest and collection costs set forth in the Lease Agreement.  Although the parties have not yet met for a Rule 26(f) conference and discovery has not yet commenced, USB has moved for summary judgment on its own claims as wells as USRAC's counterclaims against it, which are based on Walden's alleged breaches and USB's supposed turning of a blind eye to Walden's misdeeds.  USB has also moved for sanctions against USRAC.

USRAC argues that Walden did not properly award it credit for the return or salvage value of the vehicles, nor apply appropriate credits for incentives and rebates obtained by Walden.  Moreover, in a sworn affidavit, Romano asserts that the vehicles described in USB's pleadings do not appear to be those ordered or used in USRAC's operation.   (Romano Aff. ¶ 29, Docket No. 19.)  According to USRAC, Hecker often failed to properly separate billing for high end car models shipped to the USRAC facility at the request of another Hecker entity from leases attributable to USRAC.  (*Id.* ¶¶ 29-30.)

# ANALYSIS

## I.  STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Courts often hesitate to grant a motion for summary judgment before discovery has been completed, let alone before it has commenced.  *See, e.g.*, *Mont Belvieu Square, Ltd. v. City of Mont Belvieu, Tex.*, 27 F. Supp. 2d 935, 944 (S.D. Tex. 1998).  Nonetheless, Rule 56 explicitly permits a party to move for summary judgment "at any time until 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b).

## II.  USB'S MOTION FOR SUMMARY JUDGMENT

USB moves for summary judgment on its claim for breach of contract against USRAC and on USRAC's counterclaims.  A breach of contract claim contains four elements under Minnesota law: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and

(4) damages." *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000). At least two elements – performance of a condition precedent and damages – are subject to material factual disputes, precluding the grant of summary judgment to USB.

The issue of the performance of a condition precedent is directly connected to USRAC's defenses and counterclaims. A secured party may collect from an account debtor or other person obligated on collateral. U.C.C § 9-607(1). In Minnesota, "[i]t is black-letter law that an assignee of a claim take no other or greater rights than the original assignor and cannot be in a better position than the assignor." *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 669 N.W.2d 420, 424 (Minn. Ct. App. 2003), *reversed on other grounds*, 683 N.W.2d 792 (Minn. 2004). The assignee of an account debt "stands in the shoes of the assignor and is subject to contract defenses or claims of the account debtor arising by virtue of the terms of the contract out of which the receivable was created." *Delacy Invs., Inc. v. Thurman*, 693 N.W.2d 479, 485 (Minn. Ct. App. 2005) (quotation marks omitted). Specifically, Minn. Stat. § 336.9-404(a) provides that an assignee's rights are subject to

> (1) all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and
>
> (2) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.

*See also* UCC § 9-404(a)(1)-(2). Accordingly, USRAC may assert against USB its defenses against Walden regarding the amount of the account debt.

USRAC asserts that Walden breached the GM VLO by misrepresenting its capitalized costs, resulting in its consistent overcharging of USRAC. The GM VLO

provides that the capitalized cost of the vehicle, on which the lease payments are based, is "the GM Dealer Invoice price plus a dealer markup, freight, and any applicable tax . . . [plus] the invoice price of any optional equipment . . . ." (Kopolow Aff., Ex. C at 1, Docket No. 14.) The GM VLO does not reference the application of any discounts or rebates. USRAC will therefore likely be foreclosed from relying on Walden's oral representations regarding capitalized costs not included in the GM VLO. *See Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 312 (Minn. 2003) ("The parol evidence rule prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements, or prior written agreements, to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous integrated writing.") (quotation marks omitted).

At this early stage of the litigation, however, without the benefit of factual development, the Court is unable to determine as a matter of law that Walden complied with the terms of the GM VLO with regard to its calculations of the vehicles' costs. Although discovery has not commenced, USRAC has proffered evidence suggesting Walden's acknowledgement that it overcharged USRAC for some vehicles. (Roman Aff., Ex. G, Docket No. 19.) If USRAC's allegations regarding improper calculations and overcharging prove true, then USRAC's breach might be excused by Walden's failure to perform. *See Carlson Real Estate Co. v. Soltan*, 549 N.W.2d 376, 379 (Minn. Ct. App. 1996) ("[A] party who first breaches a contract is usually precluded from successfully claiming against the other party.")

In addition, USRAC argues that Walden failed to award it credit for the return or salvage value of certain vehicles. Moreover, according to USRAC, approximately half of the vehicles at issue in this case were not part of USRAC's fleet and Walden erroneously included charges related to these vehicles in its invoices. These allegations create a material dispute regarding the amount, if any, of existing account debt. Currently, USRAC's challenges regarding Walden's failures are premised on Maria Romano's affidavit. They may ultimately prove meritless. However, taking as true Romano's assertions, and based on the limited record before the Court, USB is not entitled to summary judgment on its breach of contract claim because of numerous questions regarding the amount of USRAC's account debt and the accuracy of Walden's invoices.

USB also moves for summary judgment on USRAC's counterclaims. The Uniform Commercial Code ("UCC") provides that "the claim of an account debtor against an assignor may be asserted against an assignee . . . **only to reduce the amount the account debtor owes**." UCC § 9-404(b) (emphasis added); *see id.* at cmt. 3 ("[S]ubsection (b) generally[2] does not afford the account debtor the right to an affirmative recovery from an assignee."). The Surrender Agreement, which states that it is not "creat[ing] any obligation on the part of the Bank to third parties that have any claims whatsoever against the Borrower[,]" confirms USB and Walden's intent not to deviate from this prohibition articulated by the UCC. (Kopolow Aff. Ex. E at 6, Docket No. 14.)

---

[2] The comment's qualifying word "generally" likely refers to exceptions to the rule that an account debtor cannot affirmatively recover against an assignee described in subsections (c) and (d). Those provisions are inapplicable to the instant motions.

USB argues that this provision of the UCC precludes USRAC from asserting counterclaims against it. As UCC § 9-404 and Minnesota statute make clear, however, USRAC may assert "**any** other defense **or claim**" with regard to the account debt against USB as an assignee, Minn. Stat. § 336.9-404(a)(2) (emphasis added), but "only to reduce the amount of any claim [USB] would otherwise have against it." *Export Dev. Canada v. Elec. Apparatus & Power, L.L.C.*, No. 03 Civ. 2063, 2008 WL 4900557, at *18 (S.D.N.Y. Nov. 14, 2008).

USB objects to USRAC's characterization of its alleged "obligations" in USRAC's Answer, Counterclaim, and Third-Party Complaint ("the Answer"). (Docket No. 3.) For example, USRAC asserts that "Walden's rights and **obligations, including Walden's obligation and liability for any negligent misrepresentations** regarding the application or retention of the benefit of various rebates and incentives Walden received from the purchase or lease of vehicles by USRAC, have been assigned to US Bank." (*Id.* at ¶ 81 (emphasis added).) Under the plain terms of UCC § 9-404, Minn. Stat. § 336.9-404(a)(2), and relevant caselaw, USRAC may assert against USB counterclaims relating to the account debt that it would have had against Walden, but its recovery is limited to the amount USRAC owes Walden. USRAC's Answer does not, on its face, run afoul of this rule. Likewise, USRAC's allegations in the Answer of USB's awareness of financial improprieties and misconduct by Walden – while offensive to USB – do not serve to defeat the counterclaims, which are largely based on Walden's actions relating to the account debt. It does not appear to the Court that any counterclaim asserted against USB

relies exclusively upon allegations regarding USB's conduct, other than its position as an assignee.

In its briefing and oral argument, however, USRAC has made clear that it believes it can recover affirmatively from USB based on Walden's conduct and its assignment to USB. USRAC is mistaken. USRAC asserts that Minn. Stat. § 336.9-404 is entirely inapplicable; it is not an "account debtor," it argues, because Walden's breach absolved it of any outstanding obligation it may have owed to Walden. That Walden has invoices unpaid by USRAC is undisputed, as is Walden's assignment of its accounts receivable to USB. USRAC's potentially valid defenses in this collection action by the assignee of Walden's accounts receivable do not free it from the applicability of statutory provisions relevant to account debt.

To the extent that USRAC asserts that USB's **own** conduct, outside its role as an assignee, entitles it to **affirmative** recovery beyond the account debt, the Court concludes that its allegations must be dismissed despite the early stage of this litigation. Even at the pleading stage, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 579 (2007).[3] USRAC must allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556.

USRAC's allegations against USB amount to an accusation that it knew Walden overcharged USB but nonetheless turned a blind eye towards its conduct. USRAC's

---

[3] USB acknowledges that it is essentially moving to dismiss the counterclaims, but since it relies upon some evidence outside the pleadings its motion is styled as one for summary judgment.

basis for these serious accusations of collusion is that USB was informed, or should have been informed through a review of the GM VLO and Lease Agreement, that Walden had agreed to lease USRAC vehicles at its net dealer cost, less all available rebates and incentives. In fact, neither the GM VLO nor the Lease Agreement reference rebates or incentives. To the contrary, the GM VLO defines the capitalized cost on which lease payments are based as the GM dealer invoice price plus a dealer mark up. More importantly, USB's alleged collusion with Walden would have been against its own best interest, by extending a loan to Walden against collateral USB knew to be overstated in amount.

USRAC's argument that USB was negligent in demanding payment from USRAC under the Lease Agreement is similarly baseless. USB received Walden's invoices and spoke with Walden representatives to ascertain the amount owing on USRAC's account; as a secured party, USB is entitled to attempt to collect on the collateral. There is simply no basis for believing that it has done so in an unreasonable manner.

Accordingly, the Court grants USB's motion for summary judgment only as it pertains to the allegations in USB's counterclaims of USB's own involvement in Walden's alleged misconduct. The Court denies USB's motion for summary judgment in all other regards. The Court grants USRAC twenty days from the date of this Order to submit a revised Answer, Counterclaim, and Third-Party Complaint in conformance with this Order.

## III.   USB'S MOTION FOR SANCTIONS

USB has also moved for Rule 11 sanctions against USRAC based on its assertion of counterclaims in the Answer.  Federal Rule of Civil Procedure 11 empowers federal courts to sanction parties who submit pleadings with factual contentions lacking evidentiary support, or contentions which will not "likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ."  *Id.* at 11(b)(3).  Sanctions may also be warranted where pleadings contain legal contentions not warranted by existing law.  *Id.* at 11(b)(2).  However, "[t]he imposition of sanctions is a serious matter and should be approached with circumspection."  *O'Connell v. Champion Intern. Corp.*, 812 F.2d 393, 395 (8th Cir. 1987).

Relying upon UCC § 9-404(a), USB argues that USRAC's characterization of it as being assigned Walden's rights "and obligations" is plainly contrary to law.  USB also refers to USRAC's allegations regarding its supposed collusion with Walden as offensive and defamatory.  As discussed above, in receiving the assignment from Walden USB accepted Walden's "obligations" under the GM VLO and Lease Agreement **only** in so far as its ability to recover on the collateral may be limited by any claim or defense USRAC could have lodged against Walden.  While the Court grants summary judgment to USB with regard to allegations of USB's involvement in Walden's misconduct, thus barring USRAC from an affirmative recovery from USB, the Court concludes that sanctions are unwarranted.  USRAC certainly has a basis for asserting all of its counterclaims against USB in its role as Walden's assignee.

USB also criticizes USRAC's reliance on the Stock Purchase Agreement and Option Agreement, since in a previous bankruptcy proceeding USRAC and Romano initially took the position that the Stock Purchase Agreement was unenforceable because it had been "released" through the document which USRAC now claims referenced a release of escrow. This prior proceeding occurred when Hecker and his entities were declaring bankruptcy, and USRAC was apparently concerned about the repossession of its fleet of vehicles. USRAC filed a declaratory judgment action to determine the rights and obligations of USRAC and Nugget under the Stock Purchase Agreement. Its current position – that the Stock Purchase Agreement was enforceable – comports with the resolution of the declaratory judgment action. The Court declines to penalize USRAC for adopting a contrary litigation position in a different proceeding that has subsequently settled. In sum, the Court concludes that USRAC's supposed mischaracterizations and legal assertions in the Answer are not sanctionable.

**ORDER**

Based on the foregoing of all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. USB's motion for summary judgment [Docket No. 11] is **GRANTED in part** and **DENIED in part** as follows:

   a. The motion is **GRANTED** as it pertains to the allegations in USB's counterclaims of USB's own involvement in Walden's alleged misconduct.

   b. The motion is **DENIED** in all other regards.

- 16 -

      2.      USB's Motion for Rule 11 Sanctions [Docket No. 21] is **DENIED**.

      3.      USRAC may submit a revised Answer, Counterclaim, and Third-Party Complaint in conformance with this Order twenty (20) days from the date of this Order.

DATED: August 17, 2011             _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.             JOHN R. TUNHEIM
                                                     United States District Judge